23711. MILLER *v.* THE STATE.

DECIDED SEPTEMBER 29, 1934.

*T. H. Crawford, Howell Brooke,* for plaintiff in error.
*H. G. Vandiviere, solicitor-general,* contra.

MACINTYRE, J. The indictment in this case charges W. E. Miller and Wade Stewart with committing the crime of murder by driving a Ford "pick-up" automobile, at the unlawful and wantonly reckless rate of speed of sixty miles an hour, into one Horace Marsh on March 21, 1933, in Cherokee county, Georgia, while traveling "from the direction of Canton, Georgia, toward the direction of Marietta, Georgia."

The defendants were tried jointly and convicted, the verdict being as follows: "We, the jury, find the defendant W. E. Miller guilty of involuntary manslaughter in the commission of a lawful act . . without due caution and circumspection; and the defendant Wade Stewart guilty of involuntary manslaughter in the commission of an unlawful act. . ." W. E. Miller alone moved for a new trial. His motion was solely upon the usual general grounds. The motion being overruled, he excepted.

L. T. Young testified, in substance, that on March 21, 1933, he was engaged in working the road between Canton and Marietta— "building shoulders and finishing the road;" that his automobile was parked on the right of the road, facing in a southerly direction towards Marietta, with two wheels of his car "on the pavement, at least five feet," and "two wheels off the pavement, and there was five feet from the edge of the car to the centre of the road;" that five hundred feet to the rear of his car was the brow of a hill from the top of which his car was plainly visible; that the slope from the hill to his car was a four per cent. grade, and "it was a perfect straight-away there;" that. the witness was sitting under the wheel of his car on the left side, talking to Mr. Horace Marsh, the foreman of the road; that Mr. Marsh "probably had one foot on the running-board of the car, . . was right up against my car;" that the first thing witness knew about the accident, a Ford pick-up truck, traveling "forty miles an hour, or probably more, sideswiped" witness's car, striking it and Mr. Marsh "almost at the same instant," and knocking Marsh down the road about fifty feet; that this car stopped down the road about three hundred feet from the place of the collision; and that the occupants of the car that struck his car "left pretty soon," without offering assistance. Luther Pruitt, sworn for the State, testified that in his opinion the automobile that struck Mr. Marsh was running at the rate of forty-five or fifty miles an hour. This witness further swore: "I stated there was another car there coming from the opposite direction about the same time these gentlemen here were passing coming in this direction. That was a new Chevrolet car. As to whether or not it passed Mr. Young's car . . about the time these gentlemen here were passing . . Yes, sir, it was about twenty feet above it when it hit. I can't say how far over in the road it was, and I can't say just how far he was. In other words, there were these

three cars in the road at pretty close to the same time." This witness also testified that just prior to the collision Mr. Marsh started around Mr. Young's car when the other automobile struck Mr. Young's car and Mr. Marsh. E. P. Prince, sworn for the State, testified that he thought that the automobile that hit Mr. Marsh was traveling "close to fifty miles an hour." He also swore: "I am satisfied that the car that passed coming this way crowded Mr. Stewart and Mr. Miller over into the car." Homer Fowler, sworn for the State, testified that the automobile that "struck Mr. Young's car and hit Mr. Marsh . . must have been making around fifty miles an hour."

Robert Whitener, sworn for the defendants, testified: that he was in the "Ford pick-up" with W. E. Miller and Wade Stewart at the time of the collision, at about twelve o'clock in the day; that Stewart was driving; that when they reached the top of the hill they could see a parked car; that another automobile coming north crowded the car he was in into the car that was standing in the road headed towards Atlanta; that Miller was pretty badly hurt, and was taken to a hospital in Marietta in a passing car; that witness thought they were running thirty-five to forty miles an hour when they "topped that hill;" and that Stewart "didn't use his brakes until he got right down there and seed that other car wasn't going to give no road, and when he got right on them he used his brakes." Sheriff Spears testified that he saw Miller in the hospital at Marietta after the collision and he was pretty badly cut up, and that it was not until about three weeks later that he located the two defendants in Gilmer county.

In his statement to the jury the defendant W. E. Miller said that he procured Wade Stewart to drive his, Miller's, car on an expedition to borrow money for Miller; that witness "could drive the car some, but not so good;" and that he "had owned this car some time, and . . had drove a model T." Miller's version of the occurrence in question was as follows: "We got to this place where there was a kind of a hill. . . Of course, when we got up on top of the hill I seed a car .. . and we just rolled on. He was driving, and I wasn't paying any attention much, thirty-five or forty miles an hour, and we got on down there. This car was on the right of us, and when we got down there there was another car coming to meet us, and I seed it was coming right in on us. . .

He looked down there, and he seed this big car was coming meeting us, and he seed it was coming right into us, and he turned the steering-wheel like this, and of course he done that to save us all. If he had stopped there this big car would have killed us all, and I didn't see any chance to get through." He further stated that he was nearly killed and remained in the hospital in Marietta for about two days, and that before leaving he told the doctor to send for the sheriff—that he was ready to make bond. Marsh died from his wounds shortly after the collision. The venue of the offense was proved.

We have not undertaken to set out all the evidence in the record, but feel certain that we have stated enough of it to present the salient features of the case. In the first place, we are satisfied that the jury was warranted in finding against the theories of "accident" and "intervening cause." It is insisted, however, in the brief of counsel, that the verdict is too inconsistent to stand, for the reason that Stewart, the driver of the car, was found guilty of involuntary manslaughter in the commission of an unlawful act, and Miller himself of "involuntary manslaughter in the commission of a lawful act . . without due caution and circumspection." The sole exception here being to the overruling of a motion for a new trial containing only the usual general grounds, we think that the true question for this court to decide is whether or not, under the applicable rules of law, the evidence supports the verdict against Miller. Both defendants were found guilty. What right has Miller to complain that he was convicted of a lower grade of involuntary manslaughter than Stewart, his driver, if the evidence supports the verdict against him? Though conflicting, there was evidence from which the jury could find that the defendant's automobile was not exceeding the speed limit fixed by the law of this State. In short, we are of the opinion that the jury was warranted in finding that the homicide was committed by a lawful operation of the automobile without the exercise of due caution and circumspection. Of course, Miller, the owner of the automobile, who was sitting on the seat with his driver, and knew of everything that was occurring, was responsible for the management of that automobile. *Moreland* v. *State,* 164 *Ga.* 467 (139 S. E. 77), s. c. 37 *Ga. App.* 180 (139 S. E. 361). Our conclusion is that the evi-

dence supports the verdict, and that the trial judge did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., concurs. Guerry, J., dissents.*